Good morning, Your Honor. May it please the court, Jim Baragio on behalf of the appellant and Judge Hurwitz, can you hear me okay? I can, Mr. Baragio. Okay. First of all, I wanted to thank the panel for accommodating my request to move the argument to Friday. And then I want to address the question that the court asks in its order. My response to the first question is that because the obstruction adjustment does not apply to any of the fraud counts, you can't group under section 3D1.2 section C. In other words, the resolution of the adjustment question is going to drive your grouping decision. If it doesn't apply, by definition of that guideline, grouping cannot occur. Mr. Baragio, let me ask you a question. Can I ask you a question about that? Can you hear me? Yes, yes, I can, Your Honor. Okay. As I understand it, in the district court, the defense made two arguments. First, that grouping under application 8 was inappropriate, but that second, in any event, application 7 prevented grouping. And you made a very express application 8 argument in the district court, or your client did. It's not in your briefs on appeal. The only argument in your briefs on appeal is the fact that you're entitled to an exception from grouping under application 7. I view those two as separate matters. I'm trying to figure out why, how it is that you think you've preserved the grouping issue on appeal. Well, Your Honor, I will respectfully disagree with the description of the arguments that you just gave, because I think it's always the same argument. It has been the same argument in the first appeal, in the district court, and here. The obstruction adjustment Where in your brief do you refer at all to application 8? Well, I'm not referring to that application. No, that's true. I've never, but it's not based on the application. No, it's based on the inapplicability of the obstruction adjustment enhancement. If the obstruction adjustment enhancement doesn't apply, you never get to grouping, because the guidelines tell you, you determine the question. I don't understand that argument at all. Well, let me, I guess, then direct the Court's attention to guideline 1B1.1, subdivisions A3 and A4. It requires you to, for each count of conviction, determine any specific, you know, you take the offense level, then you look at the specific offense characteristics, then you look at the Chapter 3 adjustments, such as obstruction of justice adjustment, and then, once you've done that for every count, then you address grouping. Mr. Welkoff, let me ask the question differently, because I think Judge Paz and I are asking you the same question. Here's what I understand the District Court did. It believed that the obstruction of justice count was related conduct for purposes of application 8, and it therefore enhanced your client's sentence. It may have been wrong in doing that, but you don't raise that argument, as I see it, on appeal. What you say on appeal is that because of application 7, your client cannot be enhanced. Am I describing what the District Court did? Actually, I don't think so. First of all, the District Court doesn't ever say what reasoning it uses to apply it. More importantly, with all due respect, I don't think it's an accurate description of my argument on appeal. I've argued on appeal. In addition to application note 7, I've said that the obstruction adjustment does not apply because the obstruction of conduct occurred in – it did not occur during the investigation – during the course of the investigation, prosecution, or sentencing. Well, that argument – that argument relates to – that assumes that there was proper grouping. Actually, I don't think that's correct, Judge Pius, and with all due respect, I think the adjustment is going to determine whether grouping applies or not, because let's look at the language of 3D1.2 subdivision 7. Let me ask you this. Yes. Have you ever diagrammed your argument? No, thankfully. It might be a good idea next time. Yeah, and I will submit that that's not an issue I explained very well, and for that I apologize. But if you look at what 3D1.2c says, when one of the counts embodies conduct that's treated as either a specific offense characteristic or an other adjustment to the guideline applicable to the other counts, you group. So, by definition, you have to look to see if the obstructive conduct is an adjustment to the fraud count, and if that happens, then you group. Then your grouping question is resolved. If you say – if you agree with Mr. Casares, for example, that the obstructive conduct occurred during the investigation, prosecution, or sentencing of the fraud offense to whatever count that they choose to add it to, then I lose on grouping. But if you agree with me, then grouping becomes irrelevant, because it says that you can only group if the obstructive conduct is an adjustment to the other count. In this case, I would presume you're trying to group it to the fraud count, so you have to first determine that the obstructive conduct occurred during the investigation or prosecution of – I don't know if that makes it any clearer. No, it doesn't. Your Honor, I guess the only thing I can do is I can, again, I can direct the court to – Let me try to bring – see if I – I think I haven't brought any clarity yet, but let me try again. Let's just go back to 3C.11. Forget applications 7 and 8. The instant offense of conviction is, for purposes of 3C.11, is the obstruction of justice count, correct? No, it's obstructive conduct is – Right. If the obstructive conduct occurred during the investigation, prosecution, or sentencing of the instant offense of conviction – Which I think – What is the – I'm sorry, go ahead. What's the – Is the instant – is obstruction, is it not? No, no. If it had been obstruction, then it just automatically resolves under application note 7, because it says that if you're trying to add a 371.1 to the obstructive justice offense, you would have to have significant further obstructive conduct during the prosecution or investigation of the obstruction of justice. Okay. So your position is that instant offense of conviction there means the fraud count? Well, in order for a grouping to occur, yes. It doesn't – Okay, now – Okay, now it goes on to say, or a closely related offense. In – In sub 2. In sub 2? You're on 37 – 3C.11. 3C.11. B. Yes. Little 2i. Little 2s. It's right at the end. Are you in an application guideline, or are you in a text itself, or you're in an application? Application – no. In the text. Guideline 3C.1.1, subsection B, little 2i. All right. So my question is, did your client's obstruction, obstructive conduct, occur during the investigation, prosecution, and sentencing of a closely related offense? Well, that would be a closely related offense to the fraud, because as you, I think, correctly said, instant offensive conviction means the fraud. Well, Your Honor, I think maybe one of the points of confusion that's occurring is that under the version of the guideline applicable at the time of the correct guideline manual, which I think is 2001 manual, it had to be during the investigation, prosecution, or sentencing of the instant offensive conviction. Or a closely related offense. I think that was in the guidelines at the time. As Judge Page said, subsection B, two little i's. Two little i's sounds like I'm describing somebody's face, but I don't know how to do it in Latin. Your Honor, unfortunately, I don't have the text of the 2001 manual in front of me, but my best recollection is it's limited to the instant offensive conviction. Well, even if it is, just taking your understanding of what it was, there was evidence that during the course of the investigation that led to the forfeiture of the home, that that occurred, that the attempts to get his girlfriend to submit a false claim. Well, but that's not the instant offensive conviction. No, but it's, that's what just, it has to do with the investigation. Right. But first of all, you know, I have two responses to that. The forfeiture action is not investigative in nature. It's a remedial action. There was evidence presented that when they began their entire investigation. In fact, the FBI agent signed the forfeiture certification or the verification. Right. But I don't think the question is determined purely as a matter of chronology, whether it coincides in time with the same time as the investigation is open. It actually has to be during the course of the criminal investigation of the offense of conviction. So you have to tailor it not strictly from the chronological standpoint. You have to look at the offense of conviction, and you have to look at what exactly he's obstructing. Look, if your argument on this, in this use of this enhancement turns on whether or not there was some evidence of obstruction during the investigation, your argument probably is not that strong, at least from my perspective. There are other reasons. There are other good reasons why these counts may not have been grouped, but you haven't hit on it yet. Well, Your Honor, I guess maybe I'm obviously not being as clear as I should be. No, I think you're being clear given the way in which you understand it and the argument you're trying to make. But there are other reasons why potentially these counts should not have been grouped. But that argument was not advanced in your blue brief, and you haven't articulated it here yet. Well, Your Honor, then I guess I'm confused of the theory under which the court thinks it doesn't group. Otherwise, if the court— I just said there's a potential. I'm not even clear myself because this is all very— Frankly, I understand the court's point. I think the argument, it seems to me that it's pretty strong that if you look at what the defense of conviction is, and again, it was never articulated to what precise count the government or the district court is trying to apply this adjustment to. But from my standpoint, if you look at any of the fraud counts, which is either the mail fraud counts or the travel fraud counts, none of them involve the possession of the house. And furthermore, the forfeiture action, they're not investigating anything. It's a remedial action to get the house. He's not destroying evidence. He's not trying to stop the investigation. It's a separate civil proceeding directed at getting the house. Obviously, I'm not saying it's a completely unrelated conduct in the factual sense. Factually, it's all the same events. But if you look at the Williams case that I submitted on the 28-J letter, the court applies this enhancement in a very segregated way. For example, in that case, they tried to apply it to an extortion offense. And the court said, no, it doesn't apply because the statement was made in connection with an investigation of a different offense. So you don't just look and say, well, it's the same fraud. Because in the George case, which is my main case, it was also arguably all the same fraud. But you have to look at what the defense of conviction is and what it is that he's obstructing. Now, I have a little bit of time left. And I guess if I could ask the court, if the court thinks there are other ways, which I'm not kidding, if you can at least identify it so I can try to at least do the best that I can to tell you what my position is. All right. Maybe we should hear from the government. Okay. Then I'll reserve the rest of my time. Is that okay? Can we hear from the government? Go ahead. All right. Tell us what this case is about so the audience has some idea of what we're dealing with. Good morning, Your Honors. May it please the Court. Steven Cazares for Appellee, United States of America. This case concerns an individual by the name of Stephen Ferguson, who was charged with various fraud counts, mail fraud, travel fraud, some tax charge, as well as obstruction related to his efforts to seek investors for an operation he called Global Venture Group. And what he would do was he would convince individuals that he was a wealthy, lavish living, successful businessman, flying internationally to Switzerland, et cetera. He would meet people in these locations, expensive golf courses, on international flights, and chat them up, convince them that he was really successful, and if they'd like to be like him, invest with him, and he could guarantee them huge returns. And what he would do was he would take their money, issue them a promissory note at a high interest rate, and then basically use the money to live his lavish lifestyle and seek additional victims. He did this for a long period of time. The trial also showed that prior to this development of the Global Venture Group fraud, the defendant was involved in his own various entrepreneurial businesses or claimed businesses, where he claimed to operate Environmental Technologies, Inc., another business called Surflex, relating to cleaning products. And the trial evidence included two witnesses who worked for the defendant in those operations, and the same defendant defrauded those people as well, relating to their personal identification information, seeking credit in their names, and then using those businesses as the jumping point into the larger investment fraud involving the Global Venture Group. Ultimately, the State of California began an administrative investigation into defendant's investment fraud, including seeking testimony from the Swiss victims. The FBI, again, began its own investigation. No later than June 2003, they were interviewing defendant's wife. They were interviewing the manager of his show office location. They were interviewing the manager of the jet company that used to lease private jets to fly his victims to golf courses for expensive trips to Hawaii or to Georgia, again, as a part of this kind of priming the pump of his victims. So the FBI was already interviewing these people well before the forfeiture action was filed. What defendant did was he took much of that or some of the investor money, including the Swiss victims who testified at trial, and purchased this expensive home out in Las Vegas, which was ultimately the subject of the forfeiture action that the government filed. And that was before they filed that forfeiture action, before he was indicted criminally. Before he was indicted, absolutely, several years. The investigation continued for quite some time. The forfeiture action was filed in I think it was September, October 2003. The litigation of that matter continued because defendant hired counsel for his girlfriend in order to make the fake claim and fight the forfeiture action, ultimately convincing her to submit false documents and perjurious testimony in the forfeiture action, all of which ultimately led to the ultimate criminal indictment charges and trial. So, counsel, can you take us through 3C.11 and tell us, I'm trying to figure out what the government's argument is. I was trying to figure out what the defense argument was before. With respect to the first clause of that, Clause A, what's the instant offense of conviction in your view? The instant offense of conviction is the fraud scheme. That is the mail fraud and travel fraud scheme. Okay. And so you agree with defense counsel on that. The instant offense of conviction is fraud. Absolutely. And that's the one that was enhanced by two levels. That was what was enhanced by two levels. But he's also convicted of obstruction. He is also convicted of obstruction. The government does not contend that there was substantial further obstruction of the obstruction effects. I mean, it's a fairly egregious obstruction conduct in getting his girlfriend to submit. Okay. So under Application 7, I'm sorry. It's a little more difficult because I can't tell who started the talk here until I hear it. Under Application 7, then, you couldn't have sought a two-level enhancement of the obstruction count itself. We could not and we did not. Okay. So now with respect to the enhancement of the fraud counts, the two-level enhancement of the fraud counts, do you rely on B, too little I's? Yes, we do. And there is, I mean, the relatedness issue I think is important because defendant's argument in this case relating to the obstruction enhancement has morphed from the district court to opening briefs to now the reply and the 28J letter with the citation to Williams. Originally in the district court, Your Honor was correct that the principal reliance was on a grouping claim. There was some discussion of a relatedness claim, but it really wasn't even pursued there. It was just kind of mentioned in a factual, matter-of-fact way. But it was primarily grouping. So, Your Honor, are you contending now that the obstruction of justice count is a closely related offense? No. Well, no, it's not. It is the actual offense of conviction. I'm misusing the term. But there are some cases that I'll get to that kind of address the issue, I think. Well, but that's why I'm having some difficulty. Just help me with this. A moment ago you said the instant offense of conviction was the fraud count, now fraud counts, right? Yes. And what is the closely related offense then? Well, no, the fraud counts are the offense conduct that I am speaking about. The defendant is making a claim that somehow there's a civil matter that is a different case, a different investigation, as opposed to the criminal investigation and criminal case. No, I understand his claim. We're missing each other here. And it's my fault, but help me. Clause A says that the obstruction must occur during the course of the investigation, prosecution, or sentencing of the instant offense of conviction. And what you've told me is that this occurred during the course of the mail fraud investigation.  Correct? Yes. Okay. And B requires the obstructive conduct, which was this obstruction of the forfeiture investigation, related to, I assume you're relying on sub I.I., a closely related offense. Am I right? We are relying on that. The closely related offense is the fraud offense conduct, which includes all of this, again, related conduct, including a civil forfeiture action, hiring lawyers in the course of that forfeiture action, in order to prevent information to get to the criminal investigators that is going to ultimately result in the defendant's conviction. So the offense conduct is absolutely the focus of the defendant's obstructive conduct. The government, and I apologize, the government really didn't thoroughly brief that issue because originally in the opening brief in this court, the defendant's primary claim is timing. He spent a lot of time talking about timing, citing DeGeorge, citing Rising Sun. Right. And I understand he may have waived this argument. The reason we're asking is it now seems to be the focus of our inquiry, and I'm trying to have you help us with it so I don't blame you for not briefing it thoroughly. I have some citations for you then. Just before you go to those citations, let's back up for a minute. So if you go to Application Note 7, which apparently was the application note relied upon by the probation officer in his report, right? No, they relied upon Application Note 8. I'm sorry. So there are two application notes that apply here, potentially. Potentially. 7 and 8. Yes. So 7 says if the defendant is convicted of an offense, obstruction of justice, this adjustment is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation. Of the obstructive. Of the obstructive. So your point is the government says we're not relying upon that to justify this enhancement. Correct. Okay. So you stepped down to Application Note 8. Yes. Right? If the defendant is convicted of both an obstruction offense and an underlying offense, which is what we have here apparently, the count for the obstruction offense will be grouped with the account for the underlying offense under subsection C of 3D1.2, groups of closely related counts. The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the two-level enhancement. So don't you need to go over to 3D1.2? Yes. Okay. So we go to 3D1.2. Hold on. And we did cite that in our district court. Hold on one second. I've got to go to 3D1.2. So 3D1.2C, A, B, is it C? Yes. All counts involving substantially the same harm shall be grouped together into a single group. Counts involved substantially the same harm within the meaning of this rule, and we go to C when one of the counts embodies conduct that is treated as a specific offense characteristic in or other adjustment to the guideline applicable to that other group of counts. So the question I have is what is it about the offensive obstructive conduct that qualifies as a specific offense characteristic for the fraud mail count and the fraud or the fraud travel counts? Well, I think what that section says, though, is specific offense characteristic or adjustment. The specific offense characteristics are contained in 2B1.1. The adjustment is 3C1.1 to the guideline created under 2B1.1. It says offense characteristic and adjustment. Those aren't the same. Offense characteristics are within the primary guideline of the offense. Here, the 3C1.1 is an adjustment to that underlying calculation that you've already started to make under 2B1.1. So you have to meet either one of those in order to group these two counts together, in order to do this grouping. I think that is what we relied upon, yes. Right. And your point is that we should look at other adjustments? Well, I think the guideline, the note says offense characteristics and adjustments. If they were one and the same, I don't think they would have used both terms. All right. So let me see here. You can see how easy these guidelines are to apply. Which is the application note, then, under 3D1.2 that you contend provides the answer? I apologize. I do not have my notes to that guideline with me. So I've got to go to 3D1.2 application notes. Let's see. See, I thought that I'm looking at application note 5, and it says a cross-reference to another offense does not constitute a specific characteristic or other adjustment within the meaning of subsection C. And so I'm wondering what your other adjustment argument is. In other words, there are cross-reference to other offense guidelines, but that says that doesn't make it a specific offense characteristic or adjustment. So maybe rather than have you wanted to. I mean, it appears that note 5 is concerned with double counting. Here you don't have a situation where you have a double counting. Here you have simply the addition of the plus 2 to the established guideline for the underlying offense conduct. So let me ask the question more generically. Is it your contention that the obstructive conduct was closely related because it was all part of a grand scheme to defraud and hide the money? Well, essentially, yes, because you have a course of conduct where the defendant knew the state was investigating him for defrauding these victims. He knew that the FBI was investigating him, which resulted in two actions against him. But at the time of the obstructive conduct, you already had the FBI interviewing the defendant's wife about the very fraud conduct that ultimately he sought to get a witness to lie about. So the effort to kind of disentangle the fraud of the victims from the defendant's efforts to conceal that fraud, I don't think works. And if you do that, what you have is a situation where you're only, well, essentially obstruction of investigations, whether it be SEC, let's say parallel civil investigations, IRS tax audits, et cetera. You almost couldn't have obstruction in those types of situations if you required the obstructive conduct to just be an ongoing fraud. I'm sorry. Sorry to interrupt you. Let me ask you one question not related to the applications or only marginally related to them. Your brief concedes that we do need to remand or sentence for the judge to provide a specific restitution schedule and perhaps to remove one of the conditions in the case, correct? We do concede that the restitution issues, the one being the windfalls issue, where the court didn't specify an amount of restitution in the event of a windfall, and then the tax restitution because the court didn't specify that that restitution was only available under the term for the period of supervised release. And I guess my question is, that was clear from your briefs, since we need to remand anyway, is there some virtue in remanding and asking the district court to make clear how it arrived at this two-level enhancement? Well, one, I think this court can address the issue square on because, like I said, I think there are two cases that if the court were to look at them, I think address the issue. And, again, I apologize for not having briefed it, but the defendant's argument, again, is more from the district court to opening brief to now. We could always allow, I mean, afterwards, we could always allow letter briefs or something. If the court would permit me to submit a 20-page letter. When we conference, we can. Okay. Well, there are two cases, United States v. Yip, 592, F-3rd, 1035, 3C1.1 Enhancement Applied, where the obstruction took place during a civil IRS audit of the same underlying conduct that was issued in the criminal case. Well, let me ask you this, just so people back in the room understand what we're dealing with. What was the amount of the restitution order? What was the amount of the restitution order? To the, I would think it was a little over $5 million, Your Honor, ultimately. And the restitution order was specific other than accounting for the possible windfall. The district court included the windfall language, but didn't indicate an amount of restitution the defendant should pay. So the amount of the restitution was $5 million. Approximately, Your Honor. And the monthly payments that were ordered were how much? The court did not order any at the time. I think it may have ordered a de minimis payment in the event. So the amount that they're paying on the $5 million is $20 a month. I think that's right, Your Honor. $20 a month. All right. And the hope is that they'll win the lottery and pay the rest of it. That's right. Then the mistake was deferring to probation to reset the amount. Yeah. Okay. Now, you know, it seems to me, just speaking generally, that maybe you'd agree with this. It seems to me that the guidelines themselves really constitute, in and of themselves, the guidelines, an obstruction of justice. To the extent they put us through all of this work to know. Well, no. They don't result in a, they don't produce a just sentence. Your Honor, I would concede that there can be times, for example, where in large fraud cases you have extreme amounts of loss, let's say cause to a few victims versus multiple victims. You know, a fraud guideline could possibly. What I'm really getting down to is the guidelines have taken away from the district judges the sentencing power and put that power in the hands of the U.S. Attorney's Office. In the real world. Well, I would say here, Your Honor, though.  Yes, Your Honor. And I don't necessarily disagree that the guidelines have provided the government, the prosecution, with sentencing power. However, with Booker taking away the mandatory use application of guidelines. Booker declared the guidelines unconstitutional, right? It did indicate that. And then the Supreme Court turned around and said that we should use those unconstitutional guidelines as, forget the word. We ought to address those and consider them, those unconstitutional guidelines, as advisory. And that's produced this whole system we have now where we have guidelines that are much, much, much more complex than the Internal Revenue Code. It can be, Your Honor. And I would say that it's created a whole new business for lawyers, right? One could say that it's an employment act at some level for lawyers. And it's lessened, it's lessened the role of the probation officer in this country today. Well, here in this case, though, the government asked for, to be frank, the government views this defendant as a criminal. I'm speaking generally. I understand, Your Honor. The probation officers aren't out there trying to get people back on the straight and narrow paths and see what they can do to rehabilitate them and all that. They spend a lot of time going through this whole crazy system. It does create quite a bit of logistics, labor in order to get to a sentence where a court under 3553 maybe could get to the same sentence quicker. It would probably reduce the federal debt considerably. Can I ask you one last question? Of course, Your Honor. Would it make a difference in his sentence if the counts were not grouped? Yes. Just the two-level reduction? The two-level reduction. In this case, the defendant's range was 121 to 151. The court sentenced the defendant to what? It's 130 months. The government had actually asked for an upward departure based on the egregiousness of the conduct, and this court didn't grant it. This court went with essentially mid- to low-end guideline range sentence after a multi-week trial and fairly vigorous briefing on sentencing. They got about 10 years. A little more than 10 years, Your Honor, yes. Yes, and someone who comes here without papers and is kicked out and comes back again, they can get 10 years too. If they have substantial criminal history, Your Honor, they can. This defendant was engaged in about 10 years of fraud conduct, and I think the court sentence actually almost to the year equated to the amount of time he spent defrauding the people who testified before the court. Listen, you did a good job. Thank you very much, Your Honor. If I may, there was one other case. Counsel, before you... I'm not criticizing anything you've done. I fully understand, Your Honor. I'm just talking about the system that I hope someday is going to change. I understand, Your Honor. Yeah. Yes, Your Honor. Before you sit down and you're basking in your well-earned praise, would you do one thing for me? Counsel, would you submit those supplemental citations that you just gave those two cases to the clerk? I either wrote them down wrong, or perhaps you had a page number wrong, but it would be useful if you just gave them to the clerk on a piece of paper and wrote them down, and she can give them to the other side also. I can, Your Honor, and I will. We do that. We have gum sheets. Of course I will. I am prepared to do that. Thank you very much. And unless the court has further questions for me, I do submit. Thank you, Your Honor. It's been my pleasure. Well, you have about a minute or whatever the court gives me at this point. Well, it's all right. Just talk fast. Yes, Your Honor. I have no objection to further briefing of the guidelines issue. Having said that, again, I will come back to the argument that I made in the beginning. I think the court is asking me about the issues that I did brief. On page 27 of my opening brief, I said that the evidence in the record that shows that the obstructive conduct... Listen, you've got the opportunity. Why beat a dead horse? Okay, fair enough. Let's put the waiver issue aside. I believe the Williams case that I cited shows that you must not just look at the general fraud scheme to see if it's a general related conduct, which factually, obviously, it was. You have to look and see whether the civil forfeiture proceeding involved the same conduct as an instant offense of conviction. You have to identify to which account you're trying to apply the adjustment to. You have to compare. But you've told us this already. Unfortunately, I feel like I haven't been clear, so I guess I'm trying to do my best to explain what my client's position is and why it was our main issue in the appeals. Obviously, the court feels otherwise. You'll have a chance to do that. Okay. Thank you. I mean, I take it... Just let me summarize because I want to make sure. I take it your argument is that the obstructive conduct didn't relate to the instant offense of conviction. Is that a simple summary of your argument? Right. That's fair enough. Yes. Okay. I think we understand it. Thank you. Thank you, Your Honor. All right. Take the rest of the day off. Thank you.
judges: Pregerson, Paez, Hurwitz